972 So.2d 172 (2007)
THE FLORIDA BAR, Complainant,
v.
Ronald Leon BLOOM, Respondent.
No. SC06-1025.
Supreme Court of Florida.
December 13, 2007.
*174 John F. Harkness, Jr., Executive Director, Kenneth Lawrence Marvin, Director of Lawyer Regulation, and James N. Watson, Jr., Bar Counsel, The Florida Bar, Tallahassee, FL, for Complainant.
Scott K. Tozian and Gwendolyn H. Hinkle of Smith, Tozian and Hinkle, P.A., Tampa, Florida, and James W. Radloff of Radloff and Radloff, P.A., Jacksonville, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that Ronald Leon Bloom be found guilty of professional misconduct and disbarred. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we disapprove the recommendation that Bloom be found guilty of violating Rules Regulating the Florida Bar 5-1.2(b) and (c), but approve the remainder of the referee's report and disbar Bloom.

BACKGROUND
On April 10, 2006, based on the conduct at issue here, this Court suspended Bloom on an emergency basis under rule 3-5.2 of the Rules Regulating the Florida Bar. Fla. Bar v. Bloom, 929 So.2d 1054 (Fla.2006) (table). Subsequently, on June 1, 2006, the Bar filed a six-count complaint alleging that Bloom engaged in egregious misconduct over a two-year period. Following a formal hearing at which Bloom admitted most of the conduct alleged in the complaint, the referee filed a report making findings of fact and recommendations of guilt and discipline. These factual findings and recommendations are summarized as follows.

Count I
In August 2005, Bloom obtained monetary advances from Cybersettle Financial Services (CFS), assigning to CFS, in return, his rights to attorney fees in two cases. Later, when Bloom received the fees, he converted the funds to his own use instead of forwarding the assigned fees to CFS as agreed.[1] In addition, Bloom obtained unsecured loans for thousands of dollars from three clients and failed to prepare settlement statements in four cases.
For this conduct, the referee recommends that Bloom be found guilty of violating Rules Regulating the Florida Bar 4-1.3 (failing to act with reasonable diligence or promptness in representation); 4-1.4(a) (failing to keep a client reasonably informed); 4-1.4(b) (failing to explain a matter so the client can make informed decisions); 4-1.5(a)(2) (obtaining or seeking clearly excessive fee); 4-1.5(e) (failing to communicate the rate of fee or costs to a client); 4-1.15 (failing to comply with the trust account rules); 4-4.1 (making a false statement of material fact or law to a third person); 4-8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); 5-1.1(a)(1) (failing to hold funds of clients or third persons in a trust account or commingling these funds with the lawyer's own funds); 5-1.1(b) (failing *175 to use money held in trust for its designated purpose); 5-1.1(e) (failing to promptly notify a client or third person upon receiving funds in which the client or third person has an interest, promptly deliver such funds, or promptly render a full accounting upon request); 5-1.2(b) (failing to maintain a separate trust account or trust account records); and 5-1.2(c) (failing to follow trust accounting procedures).

Count II
In May 2004, Bloom's client, Terry Bass, was repeatedly unsuccessful in attempts to contact Bloom. After Bass filed a complaint with the Bar, Bloom pressured Bass to withdraw the complaint, to no avail.
For this conduct, the referee recommends that Bloom be found guilty of violating rules 4-1.3 (diligence or promptness); 4-1.4(a) (keeping client informed); and 4-1.4(b) (explaining matters to client).

Count III
In June 2004, Bloom failed to attend several scheduled meetings with his client, Michael Heath, or with Heath's doctor, which led Heath to file a complaint with the Bar. When the Bar wrote to Bloom for his response, Bloom failed to respond, although the Bar granted him two extensions of time.
For this conduct, the referee recommends that Bloom be found guilty of violating rules 4-1.3 (diligence or promptness); 4-1.4(a) (keeping client informed); 4-1.4(b) (explaining matters to client); and 4-8.4(g) (failing to respond in writing to an official inquiry).

Count IV
In February 2005, Bloom was arrested and charged with several criminal offenses, including driving while his license was suspended, canceled, or revoked, and felony possession of controlled substances (cocaine and Lorazepam). The prosecutor dismissed the charges after Bloom enrolled in a rehabilitation program. Bloom returned to using cocaine shortly after the charges were dismissed.
For this conduct, the referee recommends that Bloom be found guilty of violating rules 4-8.4(b) (criminal act reflecting adversely on fitness as a lawyer) and 4-8.4(c) (dishonesty, fraud, deceit, or misrepresentation).

Count V
In July 2004, Bloom went to the office of opposing counsel in one of his cases to demand a settlement check and was turned away. While leaving the building, he stole two paintings from the reception area. When opposing counsel's office manager called to confront him, Bloom denied taking the artwork. However, he admitted the theft and returned the artwork after he was informed that he had been caught on videotape by security cameras.
For this conduct, the referee recommends that Bloom be found guilty of violating rules 4-1.3 (diligence or promptness); 4-1.5(b) (charging an excessive fee); 4-1.8(a) (engaging in prohibited business transactions with a client); 4-8.4(b) (criminal act reflecting adversely on fitness as a lawyer); and 4-8.4(c) (dishonesty, fraud, deceit, or misrepresentation).

Count VI
In December 2005, Bloom received a $35,000 settlement check for client Mark Colbert. Instead of depositing the check into his trust account, Bloom asked Colbert, in January 2006, to meet him at an Ace Check Express (Ace) to cash the check, telling Colbert that he did not have a trust account. Bloom told the Ace employees that one of his employees had forged his name to some trust account checks and depleted the account. Neither story was true. After Colbert endorsed the check, Bloom cashed it and gave Colbert *176 $20,000 of the $30,750 (less costs) Colbert was due. Bloom told Colbert he had to wait for the check to clear before he could give Colbert the remainder, which was also untrue. Colbert's subsequent attempts to obtain the rest of his money from Bloom were unsuccessful. Bloom still owed Colbert $7000 at the time of the hearing.
For this conduct, the referee recommends that Bloom be found guilty of violating rules 4-1.3 (diligence or promptness); 4-1.4(a) (keeping client informed); 4-1.4(b) (explaining matters to client); 4-1.5(b) (excessive fee or costs); 4-1.8(a) (business transactions with client); and 4-8.4(c) (dishonesty, fraud, deceit, or misrepresentation).

Additional Facts
Bloom has a twenty-year history of chronic cocaine use that began to spiral out of control in 2004, seriously impacting his representation of clients. Over the years, he participated in rehabilitation programs and monitoring contracts with Florida Lawyers Assistance, Inc. (FLA). Though Bloom achieved short-term sobriety while in a program, he always relapsed soon after he completed treatment. The referee found Bloom's addiction was "the product of his chosen lifestyle and not one derived from a collateral event or source (i.e. prescription drug medication as a result of an injury)." The referee also found Bloom's testimony concerning his conduct and addiction "alarmingly scary," citing the theft of the paintings as an example. Shortly before his emergency suspension, Bloom checked himself into a long-term rehabilitation program. At the time of the formal hearing, Bloom was a resident of the halfway house affiliated with the program.
Meyer Cohen, FLA's Executive Director, testified that Bloom had several addiction contracts with FLA over the years, but as mentioned earlier, he always relapsed soon after a contract ended. Bloom signed his penultimate contract with FLA after his arrest in February 2005. He left the program in April 2005 after relapsing soon after the criminal charges were dismissed. According to Cohen, Bloom contacted FLA again in March 2006, had been in frequent contact, and appeared genuine about his recovery. Cohen and other witnesses agreed that Bloom could become an asset to the Bar if he were rehabilitated.
The referee found four aggravating factors (substantial experience in the practice of law; dishonest or selfish motive; systematic and calculated pattern of misconduct; and multiple offenses) and two mitigating factors (remorse and interim rehabilitation).
As to the sanction, the referee recommended that Bloom be disbarred and ordered to reimburse the Bar's costs. Bloom petitioned for review and challenges (1) the recommendations that he be found guilty of violating rules 5-1.2(b) and (c); (2) the referee's failure to find several additional mitigating factors; and (3) the recommendation of disbarment.

ANALYSIS
Neither party challenges the referee's findings of fact; therefore, we approve those findings without additional discussion. However, Bloom does claim that the referee erred in recommending that he be found guilty of violating rules 5-1.2(b) and (c) because the Bar abandoned the allegations supporting these violations. The Bar concedes this point, and we disapprove this recommendation of guilt. We approve the remaining recommendations of guilt without discussion.
We next turn to the mitigating factors. Bloom argues the referee erred in not *177 finding four additional mitigating factors, including: (1) timely, good-faith efforts to make restitution; (2) full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings, based largely on Bloom's admissions of fact at the beginning of the formal hearing; (3) character or reputation; and (4) disability or impairment.
A referee's findings as to whether certain mitigating factors apply are presumptively correct and upheld unless clearly erroneous or without support in the record. Fla. Bar v. Arcia, 848 So.2d 296 (Fla.2003); Fla. Bar v. Morse, 784 So.2d 414, 415-16 (Fla.2001). There is competent, substantial evidence in the record to support the referee's rejection of the mitigating factor of timely, good-faith efforts to make restitution. At the time of the hearing, Bloom still owed CFS over $60,000 and one client at least $7000. Similarly, Bloom's failure to respond to the Bar's letter of inquiry concerning the Heath complaint supports the referee's rejection of the mitigating factor of cooperation with the disciplinary process.
The referee's rejection of the mitigating factor of character and reputation was justified by the fact that Bloom's reputation and character evidence was not unqualifiedly positive. Bloom's witnesses testified that Bloom could be an asset to the profession if he were fully rehabilitated. In light of Bloom's lengthy history of drug abuse, rehabilitation, and relapse, these qualifications significantly impact the weight of this testimony.
The referee's rejection of the mitigating factor of disability or impairment is also supported. The referee specifically found Bloom's addiction arose from a lifestyle choice and was of long duration. Although Bloom completed rehabilitation programs and broke free of the immediate grip of the addiction several times, his recovery was always short-lived. Further, there was evidence that Bloom used rehabilitation programs and promises to rehabilitate himself merely to avoid the negative consequences of his conduct. Most importantly, Bloom practiced law and represented clients throughout this period of drug abuse. This sufficiently supports the referee's rejection of the mitigating factor of a physical or mental disability.
Florida Bar v. Rosen, 495 So.2d 180, 181 (Fla.1986), is not in conflict. In Rosen, we recognized that "loss of control due to addiction may properly be considered as a mitigating circumstance in order to reach a just conclusion as to the discipline to be properly imposed." However, whether an addiction is a mitigating factor is based upon the circumstances of the individual case, as indicated by our use of the word "may" instead of "should" or "must."
We next review the recommendation of discipline. Here, our scope of review is broader than that afforded to the factual findings because it is ultimately our responsibility to order the appropriate sanction. Fla. Bar v. Brownstein, 953 So.2d 502, 510 (Fla.2007). Although our review is broad, we generally will not second-guess the referee's recommended discipline if it has a reasonable basis in existing caselaw and the Florida Standards for Imposing Lawyer Sanctions. Id.
Bloom's misconduct was egregious. Bloom misappropriated over $60,000 held in trust for CFS and inappropriately borrowed thousands of dollars from his own clients. He removed artwork from the building of an opposing counsel, denying having done so until he learned of the security camera videotape. He was charged with possession of cocaine, as well as driving with a suspended license.
*178 Under both the Florida Standards for Imposing Lawyer Sanctions and existing caselaw, disbarment is the presumptively appropriate sanction when a lawyer intentionally misappropriates trust funds. Brownstein, 953 So.2d at 510. Indeed, the overwhelming majority of cases involving the misuse of funds held in trust have resulted in disbarment, Fla. Bar v. Spear, 887 So.2d 1242, 1247 (Fla.2004), regardless of mitigation. Fla. Bar v. Shanzer, 572 So.2d 1382 (Fla.1991).
The facts here are similar to those in Florida Bar v. Brownstein, 953 So.2d 502 (Fla.2007); Florida Bar v. Shuminer, 567 So.2d 430 (Fla.1990); and Florida Bar v. Knowles, 500 So.2d 140 (Fla.1986). In Brownstein, we disapproved the recommendation of a three-year suspension and disbarred an attorney for misappropriating trust account funds and other misconduct despite evidence he suffered from clinical depression. Critically, the attorney did not seek medical care until after the Bar's investigation began.
In Shuminer, we disapproved the referee's recommendation of an eighteen-month suspension and disbarred the attorney for misappropriating trust account funds despite evidence of alcohol and cocaine addictions and other mitigation. The attorney, who continued to practice law despite his addiction, entered an unconditional guilty plea to the charges brought by the Bar. There, despite mitigating evidence more extensive than that found here, we determined that disbarment was appropriate, stating: "Shuminer has failed to establish that his addictions rose to a sufficient level of impairment to outweigh the seriousness of his offenses." 567 So.2d at 432; see also Knowles, 500 So.2d at 142 (disbarring attorney for misappropriating trust funds). Like Shuminer, Bloom also failed to establish that his addictions rose to a sufficient level of impairment to outweigh the seriousness of his offenses.
To summarize, we approve the referee's findings and recommendations, except for the recommendations that Bloom be found guilty of violating rules 5-1.2(b) and (c).

CONCLUSION
In light of the above, Ronald Leon Bloom is hereby disbarred, effective, nunc pro tunc, May 10, 2006, the date his emergency suspension took effect. Because Bloom has been suspended since May 10, 2006, it is unnecessary to provide him with thirty days to close out his practice of law to protect the interests of existing clients.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida XXXXX-XXXX, for recovery of costs from Ronald Leon Bloom in the amount of $10,587.65, for which sum let execution issue.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] At the time of the hearing before the referee, Bloom still owed CFS over $60,000 in misappropriated funds.